## THE STATE v. THE LACKAWANNA RAILROAD COMPANY OF NEW JERSEY.

Argued February 21, 1911—Decided June 15, 1911.

1. A statutory provision which requires railroad companies to construct and keep in repair good and sufficient bridges and passages over, under and across the railroad right of way where any public road shall cross the same, so that public travel on such road shall not be impeded thereby, does not authorize such companies to encroach upon the highways of the state in the building of bridge abutments, unless such encroachment is necessary in the proper construction of the railroad.

2. Section 29 of the General Railroad law, which provides a civil remedy for the failure of railroad companies to properly construct and maintain bridges or other crossings over the highways of the state which are intersected by their respective railroads, does not operate to relieve such companies from liability to indictment for illegally obstructing such highways, in the construction of such bridges.

On error to Sussex Quarter Sessions.

Before GUMMERE, CHIEF JUSTICE, and Justices REED and TRENCHARD.

For the plaintiff in error, *Max M. Stallman.*

For the defendant in error, *Henry Huston,* prosecutor of the pleas.

The opinion of the court was delivered by

GUMMERE, CHIEF JUSTICE. This was a conviction upon an indictment for a nuisance in constructing and maintaining, in a public highway in the borough of Andover, two bridge and culvert abutments, whereby the said highway was obstructed and narrowed so that the public could not pass and repass along the same in their accustomed manner.

The fact that the defendant company had constructed these

abutments within the limits of the highway, for the purpose of carrying its railroad across the highway above grade, over a bridge resting upon the abutments, is not denied. It asserts, however, that it was not guilty of a nuisance in doing this, for the reason that its action was justified by legislative authority. The legislation referred to is section 26 of the General Railroad law of 1903. *Pamph. L., p.* 659. That section provides that "it shall be the duty of every railroad company owning, leasing or controlling a right of way for a railroad in this state to construct and keep in repair good and sufficient bridges and passages over, under and across the railroad or right of way, where any public or other road, street or avenue, now or hereafter laid, shall cross the same, so that public travel on the said road shall not be impeded thereby; and such bridges and passages shall be of such width and character as shall be suitable to the locality in which the same are situated."

The question whether a railroad company, in carrying its railroad across a public road so high above it as to render any change in the grade of the road unnecessary, may narrow the highway by constructing the abutments for its bridge within the limits thereof, under the authority conferred by legislation similar to that contained in section 26 of the General Railroad law, has never been passed upon either by this court, or by the Court of Errors and Appeals. The matter was referred to by the latter court in the case of *Metuchen* v. *Pennsylvania Railroad Co.,* 3 *Buch.* 359, but no opinion was expressed thereon. In the case of *Township of Raritan* v. *Port Reading Railroad Co.,* 4 *Dick. Ch. Rep.* 11, the question was squarely before the Court of Chancery for decision. It was there held that legislation requiring railroad companies "to construct and keep in repair good and sufficient bridges and passages over, under and across the said railroad, where any public, or other road, now or hereafter laid, shall cross the same, of such width and character as shall be suitable to the locality in which the same are situated, so that public travel shall not be impeded," only authorized railroad com-

panies to encroach upon the highways of the state for constructing bridge abutments within the lines thereof, when such action was a necessity in the construction of the road; and that the mere fact that such a method of construction was less expensive than the spanning of the whole highway would be, did not authorize such an encroachment.

The decision referred to is that of a court of co-ordinate jurisdiction. Although not binding on us to the same extent that a decision of our own court would be, nevertheless, the question for decision being one of statutory construction, we conceive it to be proper for this court to follow the view expressed by the Court of Chancery rather than to treat the matter as *res nova.*

Following the decision of the Court of Chancery in Township of Raritan *v.* Port Reading, we hold that the construction of its abutments by the defendant company in the public highway referred to in the indictment was an unauthorized encroachment thereon, for there was nothing in the case to suggest that the bridge span could not readily have been made of sufficient length to leave the whole of the highway free to public travel.

It is further contended on the part of the plaintiff in error, that section 29 of the Railroad law of 1903 has done away with the liability to indictment of railroad companies for illegally obstructing the highways of the state. That section provides that "when any company shall not properly construct and maintain the bridges or other crossings of highways by its railroad tracks as required by law," the township or other municipality wherein such crossings are located may themselves perform this work, and collect the cost thereof from the railroad or may compel the performance of the duty by bill in equity. We find nothing in this legislation to suggest the idea that it was thereby intended to relieve railroad corporations from liability theretofore existing, either by statute or by the common law. The plain purpose of the legislature, as we think, was, not to substitute new remedies in the place of existing ones, but to provide for additional protection and relief to municipalities whose rights were in-

vaded by railroad companies in the manner indicated in the section.

The views which we have expressed lead to an affirmance of the judgment brought up by the writ of error.